Austin R. Moses and Julius A. Lutz as Executors of the Last Will and Testament of Florence E. Geidel v. Commissioner.
Lutz v. Commissioner
Docket No. 4862.
United States Tax Court
1945 Tax Ct. Memo LEXIS 69; 4 T.C.M. (CCH) 903; T.C.M. (RIA) 45301; September 28, 1945
Joseph M. Blake, Esq., 720 Brant Bldg., Canton, O., for the petitioners. William F. Robinson, Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: This is a proceeding for the redetermination of a deficiency in income tax for the calendar year 1941 in the amount of $451.72. The petition alleges that the respondent erred in the determination of the deficiency by increasing "the distributive share of the income of Florence E. Geidel from the Estate of Austin C. Brant from $2,880 *70 to $5,367.56, resulting in an increase of $2,478.56 for said taxable year 1941." Findings of Fact The petitioners are the executors of the Estate of Florence E. Geidel, who died a resident of Hayesville, Ohio, on February 25, 1945. The decedent filed her income tax return for 1941 with the collector of internal revenue for the eighteenth district of Ohio, at Cleveland. Florence E. Geidel was a sister of Austin C. Brant, who died testate a resident of Canton, Ohio, on October 12, 1928. In 1941 she had a one-third interest in the estate of her brother, if she lived to receive it on distribution. The Central Savings Bank & Trust Co., of Canton, was appointed executor of the Estate of Austin C. Brant in October, 1928. This Trust Company was closed in the bank crisis of 1933 and never reopened. It resigned as executor of the estate in February, 1934, and Joseph M. Blake, who had theretofore been the Trust Company's attorney for the estate, was appointed administrator de bonis non with the will annexed on February 28, 1934. The last will and testament of Austin C. Brant reads as follows: "ITEM I. It is my will and I hereby direct, that all my just and valid debts, including expenses *71 of my last illness and burial, be first paid out of my estate, the same to be satisfied and discharged by the Executor of my estate as soon after my decease as may be reasonable, however, no part of my personal property hereinafter specifically bequeathed, to be used in the payment of my said debts. "ITEM II. I give and bequeath to my nephew, Austin T. Brant, if he be living at the time of my decease, my Pearl Shirt Studs, Diamond Ring, and my Oil Portrait painted at Boston, and it is my request that my said nephew do not dispose of the same but cause the aforesaid articles and property to be handed down to some member or members of the Brant family. "I give and bequeath to Martin H. Schmid, my Diamond and Ruby Stick Pin, the same having been presented me by my wife, Mary B. Brant, now deceased; and I give and bequeath to my brother, Dr. Edwin D. Brant, my Gold Watch, office furniture and furnishings, safes, medical library, surgical instruments and automobiles. "All household goods belonging to me including furniture, rugs, carpets, pictures and furnishings of whatsoever kind and description, I give to my two sisters, Florence E. Geidel and Effie E. Brant, and in the event that *72 either be deceased at the time of my death, the survivor to take said property. "I grant and give to my brother, Dr. Edmund D. Brant, and to Eleanor B. Garde Schmid and her family if they desire, the right of burial on the family burial lot located in West Lawn Cemetery, Canton, Ohio. "ITEM III. My tract of real estate located in Lind County, Texas, and being a farm consisting of 160 acres, more or less, and all my other real estate, excepting the East half of the South half of Lot No. 283 in the City of Canton, Ohio, and Lot No. 33 in the City of Canton, Ohio, except the East half of the South half, to which I hold the fee simple title, and which are now under 99 year leasehold, I will, direct, and hereby authorize and empower the Executor of my estate to sell and dispose of said real estate, (not including however, part of Lot No. 283, and part of Lot No. 33, in the City of Canton, Ohio, aforesaid), either at public or private sale and upon such terms and conditions as my said executor may deem for the best interest of my estate, hereby empowering my said executor to make all necessary deeds and instruments for the conveyance of said real estate to the purchaser or purchasers *73 thereof, hereby ratifying and confirming all that my said Executor may or shall do in the premises. "The proceeds arising from the sale of said real estate together with all the rest and remainder of my personal estate remaining after the payment of my just and valid debts, (not including income from leasehold estate), I will and bequeath the same to my brothers and sisters; John F. Brant, Edmund D. Brant, Elizabeth Z. Bryant, Florence E. Geidel, and Effie E. Brant, and to my nephew, Austin T. Brant, they each to share and share alike, that is my nephew is to take an equal share with my said brothers and sisters. "In the event that any of my said brothers and sisters or my said nephew, Austin T. Brant, be deceased, at the time of my death leaving no issue surviving, the share that would have gone to such brother or sister or to said Austin T. Brant, if living, to go to the surviving brothers and sisters and said Austin T. Brant. "ITEM IV. I am the owner of the title in fee simple to the East half of the South half of lot No. 283 in the City of Canton, Ohio, and of lot No. 33 in said City excepting the east half of the South half of said lot No. 33, and being the same premises *74 excepted from the provisions of Item III of this my last Will and Testament, and both of which premises are now under lease for a period of 99 years, the West half of the South half of Lot. No. 33, being under a separate lease from the North half of Lot No. 33, aforesaid, and all of which leasehold premises I do hereby will and devise unto the Executor of this my last Will and Testament and its successor in trust, and upon the following conditions and limitations: "Said premises are now yielding an annual rental under the terms and conditions of said leases, and I direct and empower the Executor of my Will and its successor in trust, or any trustee appointed for the purpose of carrying out the provisions of this my last Will and Testament, to collect the rents and income from said premises and make disposal of the same as follows: "I give and bequeath unto the following named persons, if living at the time of my decease, they having been employees in my family, the following sums and amounts of money: - "1. To Mrs. Lillian Brumbaugh, the sum of Two Hundred Dollars ($200.00). "2. To Mrs. Ada F. Lahr, the sum of Two Hundred Dollars ($200.00). "3. To Michael Ross, the sum of *75 Two Hundred Dollars ($200.00). "4. To Anna Doll, the sum of Five Hundred Dollars, ($500.00). "5. To Joseph Jacobs, the sum of Two Hundred Dollars, ($200.00). "6. To John Helser of Hayesville, Ohio, the sum of Two Hundred Dollars, ($200.00). "The above bequests to be paid out of the income from the rentals of my leasehold estate, and to be paid within 18 months after the Probate of this my last Will and Testament. "(a) I will and bequeath to Mrs. Eleanor Garde Schmid, daughter of my deceased wife, if she be living at the time of my decease, the sum of Fifteen Thousand Dollars ($15,000.00), the same to be paid to her as follows: Five Hundred dollars ($500.00) annually for the period of five years, and thereafter the sum of One Thousand Dollars, ($1000.00) per year until the whole of said bequest of Fifteen Thousand Dollars, ($15,000.00) has been paid, subject however, that if said Eleanor Garde Schmid be deceased, at the time of my death, or she die prior to the payment of the whole of said bequest, and leave no issue her surviving, in either of said events such bequest shall lapse, and the amount of such bequest that would have gone to Eleanor Garde Schmid had she been living, *76 or deceased leaving surviving issue, is to lapse and become a part of my estate to be disposed of as in Paragraph 'j' of this item of my will. "(b) I will and bequeath to Virginia L. Bowdle, niece of my deceased wife, the sum of One Thousand Dollars ($1000.00), the same to be paid to her in annual payments of One Hundred Dollars, ($100.00), subject however, that if said legatee be deceased at the time of my death, or she die prior to the payment of the whole of said bequest, such bequest or the unpaid remainder, is to lapse and become a part of my estate. "(c) I give and bequeath to Rebecca Schriver, daughter of Mrs. G. Howard Schriver, the sum of $500.00, the same however to be paid to her on arriving at legal age and which sum is to be held in trust by the Executor of my estate, until she reach her majority, and in the event she should not live until said time, said bequest is to lapse and become a part of my estate to be disposed of as the residue thereof. "(d) I give and bequeath to S. Paul's Episcopal Church of Canton, Ohio, the sum of Four Thousand Dollars, ($4,000.) the same to be paid in annual installments of Four Hundred Dollars ($400.00) per year until the whole of *77 said sum is paid. "(e) I give and bequeath to The Young Women's Christian Association of Canton, Ohio, the sum of Five Thousand Dollars, ($5,000.00) the same to be paid in annual installments of Five Hundred Dollars, ($500.00) per year until the whole of said sum is paid. "(f) I will and bequeath unto The Methodist Episcopal Church of Hayesville, Ohio, the sum of $2,000.00, the same to be paid in ten annual installments of Two Hundred Dollars, ($200.00) each until the whole of said bequest has been paid. "(g) I give and bequeath to The Canton Medical and Library Association the sum of One Thousand Dollars, ($1,000.00), the same to be paid in annual installments of One Hundred Dollars, ($100.00) until the whole bequest has been paid. "(h) I give and bequeath to The Canton Clinic or any organization succeeding the Canton Clinic engaged in the same character of work, the sum of One Thousand Dollars, ($1,000.00), the same to be paid in annual installments of One Hundred Dollars ($100.00), until the whole bequest has been paid. "(i) I will and bequeath to my nieces, Pauline, Helen, Marguerite, and Carlotta, children of my brother, John F. Brant, each the sum of Two Hundred Dollars, *78 ($200.00); and I also give and bequeath to my niece, Vera Woodward, Daughter of my sister, Elizabeth Z. Bryant, the sum of Two Hundred Dollars, ($200.00); and I also give and bequeath to my nephew, Dr. G. D. Bryant and Harry C. Bryant, each the sum of Two Hundred Dollars, ($200.00); and I also give and bequeath to Lille Brant, wife of my nephew, Dr. Austin T. Brant, the sum of Two Hundred Dollars, ($200.00). "(j) The balance, rest, and remainder of the rents and income from said real estate, I give and bequeath the same unto my brothers and sisters, and my nephew, Austin T. Brant, as follows: John F. Brant, Edmund D. Brant, Elizabeth Z. Bryant, Effie E. Brant, Florence E. Geidel, and Austin T. Brant, share and share alike, but if any of the said legatees be deceased at the time of my death, leaving no issue surviving, or in the event that any of said legatees, shall die after my death without leaving surviving issue the bequest to such decedent shall lapse and become a part of my estate to be shared equally by the surviving brothers and sisters, and Austin T. Brant, and their heirs. "I have made provisions in this, Item IV of my will, for the holding of my leasehold property in *79 trust until such time as the rents arising therefrom are sufficient to pay out all of the bequests in this Item and this I do for the reason that I do not desire my real estate that is under lease to be put to immediate sale for the payment of the aforesaid bequests, but it is my will however, and I do hereby authorize and give full and complete power unto the Executor this my last Will and Testament to sell all or any of said lots of real estate under leasehold at any time prior to the payment of the aforesaid bequests out of the rental income, and also after the payment of such bequests out of the rental income, but my said Executor in fixing a price for the sale of said real estate shall take into account the rental income from said properties and use best endeavors to secure the highest obtainable price therefor. "Said real estate is to be sold subject to the existing lease on each tract thereof, and I hereby give and grant full and complete power to the Executor of this my last Will and Testament to make such sale at private sale, my said executor using best endeavors to obtain the full value of said premises in making such sale or sales; hereby giving and granting to my said *80 executor full and complete power and authority to execute all necessary deeds or instruments of conveyance for the transfer of the title of said real estate to, the purchaser or purchasers thereof, hereby ratifying and confirming all that my said Executor may or shall do in the premises. "From the proceeds arising from the sale of real estate under leasehold, I will and direct that there shall first be paid out of the same any remaining unpaid bequests above mentioned if any so remain unpaid; and secondly, out of the residue, rest, and remainder of the proceeds of the sale of said real estate, I will and bequeath and direct the Executor of my estate to pay to The Young Women's Christian Association of Canton, Ohio, the sum of Five Thousand Dollars, ($5,000.00), and which bequest I make to said association in memory of my deceased wife, Mary B. Brant, she in her lifetime having been greatly interested in the welfare of said association. "I also will and bequeath to The Aultman Hospital of Canton, Ohio, the sum of Five Thousand Dollars, ($5,000.00), the same to be paid from the rental income of my real estate and in the amount of Five Hundred Dollars ($500.00) per year until the *81 whole of said bequest has been paid, and which sum of money is to be used in the establishing and maintaining of a room in said hospital especially for doctors and to be known as the Dr. A.C. and E. D. Brant room. "I also will and bequest out of the proceeds of the sale of said real estate to The First Methodist Episcopal Church of Canton, Ohio, the Dueber Avenue Methodist Episcopal Church of Canton, Ohio, and The Simpson Methodist Episcopal Church of Canton, Ohio, each the sum of One Thousand Dollars, ($1,000.00). "In the event of sale of any or all of my real estate under leasehold prior to the payment of all bequests before mentioned in my will as required to be paid from the rental income from the leaseholds, it is my will and I hereby direct that such part of any bequest remaining unpaid at the time of such sale, be paid out of the proceeds arising from the sale of any part of my real estate under lease. "The rest, residue and remainder of the proceeds of the sale of my real estate and of the remainder of my estate after the payment of all of the bequests herein provided, and cost of administration of my estate, I will and bequeath the same to my brothers and sisters and *82 their heirs and to my nephew, Austin T. Brant and his heirs, share and share alike, but if any of the aforesaid beneficiaries be deceased at the time of the distribution of my estate and leave no issue surviving, the bequest that would have gone to such beneficiary if living, or issue if any, shall go to and be distributed to the remaining living beneficiaries and the issue of any that may be deceased. "ITEM V. I nominate and appoint The Central Savings Bank and Trust Company of Canton, Ohio, Executor of this my Last Will and Testament. "IN TESTIMONY WHEREOF, I have hereunto set my hand this 25th day of May, A.D. 1928." When Austin C. Brant executed his will he was receiving each year $22,000 net income from three 99-year leases on his three central properties, to-wit: $10,000 per annum from the north half of lot No. 33, Canton, Ohio, known as the Melbourne lease; $9,000 from the Canton Fireproof Building Co., the lessee of the west half of the south half of lot No. 33 known as the Brant Building lease; and $3,000 per annum from the North Court Street property known as the Dean lease. He considered himself without debts and of sufficient means to warrant giving in his will *83 cash legacies aggregating about $50,000. In 1931 all three 99-year leases came to an end through default. The growing severity of the oncoming depression is shown by the fact that December 12, 1930, was the last payment made on the Melbourne lease; that December 11, 1931, was the last payment made on the Dean lease; and that on November 6, 1931, notices of default were served by the Brant estate and the Whiting estate as to the Brant Building lease, because of the failure to pay taxes. During 1932 the Brant estate received no ground rent on any of the three leases, while taxes, insurance premiums, expenses and repairs went on. Brant died owning many different parcels of real estate and leases thereon, and little else besides. The Brant parcel of real estate consisted of the Brant Building in the City of Canton, which was an eight-story office and storeroom commercial building built on two lots, one of which was owned by the estate of Brant and one by the Whiting estate. The Brant Building was a single commercial unit. Upon the cancellation of the two 99-year leases on this property much litigation arose on the part of the bondholders who held bonds secured by the leases on the *84 property. There was also litigation as to the percentage of the taxes and operating costs to be borne by the Brant estate and the Whiting estate and the apportionment of receipts from rentals between the two estates. The effect of the depression on the Brant estate was such that on and after the appointment of Joseph M. Blake as administrator de bonis non on February 28, 1934, the following was and thereafter became the situation of the estate in regard to unpaid claims: $ 34,800.00
unpaid legacies under Dr. Brant's
will
75,000.00
First National Bank notes, on
which Dr. Brant was an accommo-
dation comaker
23,049.00
Ohio taxes unpaid against the
Brant Estate part of the Brant
Building
53,467.07
Claim of U.S. Treasury for income
taxes for 1934
17,644.11
Interest on above, if claim stood
12,541.35
Unpaid taxes on North half of Lot
#33, being property covered by the
leases held by Melbourne
1,062.80
Unpaid taxes on North Court
Street property - part of Lot 283
covered by the Dean lease
$217,564.33
Total above claims
It was apparent that if during the period of the continuing depression those claims had been made good and *85 enforced by compelling the sale of the estate property at the prevailing prices, the estate might be and probably would have become insolvent, and that in any event the kin of Dr. Brant, who were legatees under his will, would have got little or nothing. The handling of the estate became a matter of salvage. It was clear to the administrator, that if there was to be any salvage for the heirs, it was necessary to accomplish two things: First, to defeat or beat down and settle at a low figure the claims against the estate; Second, to carry the estate along until from the income of the estate and sales of property at reasonable prices, sufficient funds could be secured to settle the surviving claims. Although the will of Brant provides: "I have made provisions in this, Item IV of my will, for the holding of my leasehold property in trust until such time as the rents arising therefrom are sufficient to pay out all of the bequests in this Item" no trust was ever set up either by the executor or the administrator to show the operation of the Brant Building separate from the rest of the estate. The income from the estate, when there was income, was treated as any other income of *86 the estate by the administrator. It was used to pay claims against the estate and where there was not sufficient income from the Brant Building to pay operating expenses, those expenses were paid from other assets of the estate. In 1935 the administrator filed a petition in the Stark County, Ohio, Common Pleas Court entitled "Blake, Administrator, etc., of the Austin C. Brant Estate v. John F. Brant and the other Brant heirs," by which the administrator sought the construction of the will of Austin C. Brant and the determination of his rights and powers thereunder. The decree therein settled the following points: "FIRST: That on the deaths of Edmund D. Brant and Austin T. Brant, their respective interests in the Estate under the Will of Austin C. Brant lapsed, and that neither the heirs at law of Edmund D. Brant as such, nor Lille Pettingill Brant, the widow and sole devisee under the Will of Austin T. Brant, had any right, title or interest in the Estate. "SECOND: That Joseph M. Blake, as Administrator de bonis non with the Will annexed of Austin C. Brant, has all the rights and power granted by the Will of Austin C. Brant to the Central Savings Bank and Trust Company, as Executor *87 of the Last Will and Testament of Austin C. Brant, and has the right to sell and convey all the real estate of which said Austin C. Brant died seized, without first obtaining the direction, approval or order of the Probate Court of Stark County, Ohio. "THIRD: That the three 99 year leases covering the Brant Estate part of the Brant Building, the North half of Lot Number 33, Canton, and the East half of the South half of Lot Number 283, Canton, were no longer in force, and that said Administrator of the said Brant Estate has the right and power to sell said real estate, free, clear and unencumbered by said leases anything to the contrary in the Will of Austin C. Brant notwithstanding." Joseph M. Blake has acted as administrator de bonis non of the estate of Austin C. Brant up to the present time. The estate is still unsettled. He is administering the estate under his first and only appointment and all of his acts as administrator have been done pursuant to the Probate Court of Stark County, Ohio, or have received the approval of that Court. Prior to 1941 all of the legacies provided for by the will of Brant had either been paid or compromised. Most of the larger legacies were compromised *88 by transferring to the legatees parcels of real estate which could not otherwise be satisfactorily disposed of. During 1941 the administrator received installment payments on sales of real estate in the amount of $24,987.50. His disbursements during the year for the payment of debts owed by the estate were in the total amount of $29,124.55. This did not clear up all of the claims against the estate, however, and some were paid in 1942. Neither did they cover claims of the administrator for his own services which he indicated to the court would be between $30,000 and $40,000. The administrator filed his second account as administrator with the Probate Court in 1942 and the account was approved on September 30, 1942. This account covered his operations as administrator from May 2, 1935, to May 1, 1942. In such report he stated: "The last paragraph of Item 4 of the Will of Austin C. Brant now governs the distribution of the balance of his Estate and is as follows: 'The rest, residue and remainder of the proceeds of the sale of my real estate and of the remainder of my estate after the payment of all of the bequests herein provided, and cost of administration of my estate, I will *89 and bequeath the same to my brothers and sisters and their heirs and to my nephew, Austin T. Brant and his heirs, share and share alike, but if any of the aforesaid beneficiaries be deceased at the time of the distribution of my estate and leave no issue surviving, the bequest that would have gone to such beneficiary if living, or issue if any, shall go to and be distributed to the remaining living beneficiaries and the issue of any that may be deceased.'" He further stated: "Under the will of Austin C. Brant, and as the same was construed by the Court in said proceeding [referring to the decree of the Stark County, Ohio, Common Pleas Court entered April 26, 1935], above set forth, the following persons at the date of this Account have as Legatees of Austin C. Brant, the interests herein designated in the residue of said Estate; "Florence E. Geidel, Sister and Legatee of Austin C. Brant, who is living, and whose address is sometimes 10 Otoe Street, Manitou Springs, Colorado (at present there) and sometimes at Brantwood, Hayesville, Ashland County, Ohio. She has, at this time, a one-third interest in the Estate." During 1941 and for a number of years prior thereto the administrator *90 made some small distributions to the distributees of the estate. As one of the distributees Florence E. Geidel during the years 1935 and 1936 was entitled to and did receive one-fourth of the amounts distributed. As such distributee she received $800 in 1935 and $900 in 1936. The other distributees received three times that amount. By reason of the death of one of the distributees without issue surviving in the latter part of 1936, or early 1937, Florence E. Geidel became entitled to receive one-third of any further distributions. There was distributed to her in 1937 $900, and to the other distributees $1,800; in 1938 $1,000, and to the other distributees $1,999.80; in 1939 $1,480, and to the other distributees $3,009.22; in 1940 $1,920, and to the other distributees $3,840. Beginning in September, 1940, distributions were made monthly. Florence E. Geidel received $240 and the other distributees $480 monthly. Thus she received $2,880 in 1941 and the other distributees $5,760. These were the only amounts which the administrator thought could be safely distributed without jeopardizing the interests of the estate. He had not received the full amount of the fees to which he was entitled *91 but he refrained from making a claim for the full amount of his fees until the administration should be closed and the estate fully settled. In 1942 the administrator sold a certain parcel of real estate belonging to the estate for $86,000, which amount was at once distributed to those entitled to receive distributions and in the summer of 1944 another property was sold for $30,000, which amount was likewise at once distributed, Florence E. Geidel receiving one-third of such distribution. The administrator filed an income tax return for the Brant estate for 1941. In such return he included all of the income of the estate derived from many different sources. He also claimed the deduction from gross income of the amounts distributed to persons entitled to receive distributions from the estate in 1941, included among which was the $2,880 paid to Florence E. Geidel. The return showed no net income and, accordingly, no tax was paid thereon. In her income tax return for 1941 Florence E. Geidel reported as taxable income the $2,880 which she had received in that year from the administrator. She did not report a greater amount. Upon the audit of the return the respondent determined that *92 under the terms of the Brant will the distributable income of the estate for 1941 was $16,102.68, of which Florence E. Geidel's share was one-third, or $5,367.56. Since she had reported the receipt of only $2,880 he added to her income for the year $2,487.56, which he considered distributable income, and thereby determined the deficiency here in controversy. The estate of Austin C. Brant during the year 1941 was in process of administration and settlement. The income of the Brant estate was not the income of a testamentary trust and the income was not currently distributable income. Opinion The petitioner's decedent, Florence E. Geidel, filed an income tax return for the calendar year 1941 reporting therein as taxable income the $2,880 which she received from the estate of Austin C. Brant. In the determination of the deficiency the respondent added to that amount $2,487.56 which he determined represented distributable income of the estate receivable by Florence E. Geidel. In his notice of deficiency, upon the basis of which this proceeding is brought, the respondent stated: You reported $2,880.00 as your distributive share of the income from the Estate of Austin C. Brant. It *93 has been determined that your share was $5,367.56 which results in an increase of $2,487.56 to your gross income. It is the respondent's contention in this proceeding that the estate of Austin C. Brant was not, during 1941, in process of administration and settlement. He states his contention on brief to be: * * * that in the year 1941 Joseph M. Blake was in fact and under the terms of the will acting as trustee of the estate. Therefore, since the estate was not in the process of administration during the taxable year, the beneficiary [Florence E. Geidel] was taxable upon her full distributive share of the income, computed without deduction for loss on sale of corpus. Respondent's theory of the case involves the following sequence of contentions: (1) that the loss on sale of corpus is not deductible in determining distributable income to the beneficiaries; (2) that Joseph M. Blake was in reality acting as trustee of the estate rather than administrator; (3) therefore, the income of the estate, computed without deduction for loss on sale of corpus, was income to be distributed "currently" as provided in Section 162 (b) of the Internal Revenue Code, and was *94 not income which may be either distributed or accumulated at discretion as provided in Section 162 (c); and (4) as income to be distributed "currently", it "shall be included in computing the net income of the beneficiaries whether distributed to them or not," as provided in section 162 (b). Respondent further calls the attention of this Court to Item IV of the will of Austin C. Brant. After designating the leasehold properties, including the property called the Brant Building (the west half of the south half of lot No. 33), the will continued as follows: * * * all of which leasehold premises I do hereby will and devise unto the Executor of this my last Will and Testament and its successor in trust, and upon the following conditions and limitations: Said premises are now yielding an annual rental under the terms and conditions of said leases, and I direct and empower the Executor of my Will and its successor in trust, or any trustee appointed for the purpose of carrying out the provisions of this my last Will and Testament, to collect the rents and income from said premises and make disposal of the same as follows: [Italics supplied]. It early developed that Brant's estate *95 could not be administered as he had planned; for the three 99-year leaseholds were forfeited in 1931, although not cancelled by court decree until a little later. The legacies which were to have been paid from the income of the leaseholds could not be paid. The administrator, with the approval of the court, compromised the claims of the legatees by transferring to them different parcels of real estate which were in no wise connected with the leasehold estates. Thereafter the administrator requested the court to advise him how to proceed. He was given authority to dispose of all of the real estate as best as he could and to divide the proceeds among those who were entitled under the will to distributions. He thereafter proceeded under the instructions of the court to settle the estate. Many suits were brought against the estate. In all no less than 23 suits and judicial proceedings were had in the settlement of the estate. Due to the depressed conditions of the real estate market no immediate sales of property could be made until about 1940 or 1941. The income of the estate was used with the full approval of the Probate Court to pay delinquent taxes and claims against the estate. *96 The respondent relies upon section 162 of the Internal Revenue Code as his authority for his determination of the deficiency which is involved in this case. That section provides, so far as material, as follows: SEC. 162. NET INCOME. The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that - * * * * *
(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, and the amount of the income collected by a guardian of an infant which is to be held or distributed as the court may direct, but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year: (c) In the case of income received by estates of deceased persons during the period *97 of administration or settlement of the estate, and in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary. The respondent submits that Joseph M. Blake was in fact and under the terms of the will of Austin C. Brant acting as trustee of the estate in the year 1941, rather than as an administrator, and relies upon section 19.162-1 of Regulations 103, which reads in part as follows: The income of an estate of a deceased person, as dealt with in the Internal Revenue Code, is therein described as received by the estate during the period of administration or settlement thereof. The period of administration or settlement of the estate is the period required by the executor or administrator to perform the ordinary duties pertaining to administration, *98 in particular the collection of assets and the payment of debts and legacies. It is the time actually required for this purpose, whether longer or shorter than the period specified in the local statute for the settlement of estates. If an executor, who is also named as trustee, fails to obtain his discharge as executor, the period of administration continues up to the time when the duties of administration are complete and he actually assumes his duties as trustee, whether pursuant to an order of the court or not. * * * The question whether the estate of Brant was in process of settlement and administration during 1941 is a question of fact. All the evidence of record in this case shows that it was. During 1941 Joseph M. Blake was administrator of it and acted in no other capacity with respect to it. He had been appointed administrator de bonis non in 1934 and had never received any other appointment. Some of the claims against the estate were not settled until 1942. In his second account filed by him as administrator with the Probate Court in 1942, he stated: As heretofore stated, the Estate is now without obligations, except as to such further compensation as the Court may hereafter *99 see fit to allow for services as Administrator and Attorney. * * * * *
The task of freeing the Estate from the claims against it having been concluded, there remains the job of reducing the Real Estate to cash at fair prices and closing the Estate. The speed with which that can be done will depend on conditions as they develop, and upon how far the legatees desire to go in sacrificing price in order to sell the property. There is no reason why the Estate cannot be closed very quickly if it is agreeable to the legatees to accept such prices as can be got by quick private sale or public sale. The Administrator will be controlled by their wishes in the matter. [Italics supplied]. All of the evidence goes to show that the administrator was acting with reasonable dispatch in the performance of his duties and with the approval of the Probate Court. We think there is no ground whatever for the respondent's contention that Joseph M. Blake was acting as trustee of the estate during 1941, rather than as administrator. As a residuary legatee of the Brant estate Florence E. Geidel was entitled to receive her part of any distributions of the estate while living. The administrator *100 testified that he made during 1941 and prior years such distributions from the estate for the benefit of the distributees as he thought could safely be made without jeopardizing the interests of the estate. We have no reason to doubt the accuracy of his statements. He clearly was under no obligation to make distributions until the estate was fully closed. Such distributions as he did make were made upon his own responsibility. He had no obligation to make them. With respect to the contention of the respondent that Florence E. Geidel is taxable in 1941 upon a greater amount of distributions from the estate than she actually received it is only necessary to point out that if she had died after 1941 and before any distributions were made in 1942, neither she nor her estate would have been entitled to receive any part of the distributions which might thereafter be made whether from income of the estate or principal; for she was entitled to receive the distributions only if alive when they were made. Her right under the will of Brant to receive distributions from the estate gave her no right in respect of any income of the estate which was not actually distributed. We think it clear *101 that section 162 (b) of the Code, above quoted, has no application to this case. Section 162 (c) is the applicable provision. Decision will be entered under Rule 50.